**CHIN FONG ex rel. NGE ARK LAI v. TILLINGHAST, Com'r of Immigration.**

Circuit Court of Appeals, First Circuit.
July 6, 1928.

No. 2185.

1. Aliens ⊛⇒32(8)—Evidence held sufficient to support decision of immigration authorities that alleged father's citizenship and parentage of Chinese applying for admission were not established.

Evidence *held* sufficient to support decision of immigration authorities that citizenship of alleged father of Chinese *applying for admission*, and relationship of father and son between them, were not established.

2. Habeas corpus ⊛⇒92(2)—District Court held without jurisdiction to determine merits on petition for habeas corpus seeking release of alien ordered deported, where fair hearing was had.

District Court was without jurisdiction to determine merits, on petition for writ of habeas corpus seeking release of petitioner as the foreign-born son of a Chinese who claimed to be a United States citizen after order of deportation, where order was sustained by some evidence and a fair hearing was had.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Petition by Chin Fong, on the relation of Nge Ark Lai, for a writ of habeas corpus to Anna C. M. Tillinghast, United States Commissioner of Immigration. From an order dismissing the petition and denying the writ, petitioner appeals. Affirmed.

Walter Bates Farr, of Boston, Mass. (E. F. Damon, of Boston, Mass., on the brief), for appellant.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and BREWSTER, District Judge.

BINGHAM, Circuit Judge. The applicant, Nge Ark Lai, seeks admission to the country as the foreign-born son of Nge Jung, who claims to be a citizen of the United States. He arrived at Boston January 29,

1927, being then about 29 years old. The date of his birth was April 1, 1898. He was ordered deported by the Department of Labor on the ground that the boards of special inquiry and review were not satisfied as to the citizenship of the alleged father or the claimed relationship of the applicant. An order of deportation having been entered, a petition for habeas corpus was brought, and, a return thereto having been made, the District Court on September 12, 1927, after hearing, ordered that the petition be dismissed and the writ denied. The order involved a finding and ruling to the effect that the applicant had been accorded a fair hearing before the respective boards of the Department of Labor, and that the court was without jurisdiction to pass upon the merits of his claim. From this order the applicant appealed to this court.

[1, 2] The applicant contends that the decision of the immigration authorities was arbitrary and unfair, in that it was not supported by any substantial evidence, and that for this reason the District Court erred in dismissing the petition and denying the writ. This is the only question presented.

At the hearing before the court the only evidence submitted was that contained in the report of the proceedings before the immigration authorities.

The report shows that the case was twice reopened for the submission of additional evidence; that the board of special inquiry passed upon the questions involved on two different occasions; that appeals were taken from each of its recommendations; that the board of review on each appeal, after hearing, approved the recommendations of the board of special inquiry; and that the Secretary of Labor each time entered an order of exclusion. It also shows that the applicant, the alleged father, and four other witnesses gave evidence, and that a court record and file records of the Department of Labor, made in 1901, 1909, and 1915, containing statements made by a claimed maternal uncle of the alleged father, a claimed brother of the alleged father, and two sons of the claimed brother of the alleged father were introduced.

The evidence given by the applicant and alleged father was in substantial agreement; that of the other witnesses contained many discrepancies. The testimony which the latter gave was not only inconsistent in itself, but with that of the applicant and the alleged father.

The testimony of the applicant and alleged father tended to show that the latter's name was Nge Jung; that "Nge" was his family or surname; that he was born December 12, 1878, in Dutch Flats, Cal., and was about 49 years old; that when about 4 years old he went to China with his father, mother, and older brother; that when about 16 or 17 years old he married in China and had born to him six sons and one daughter; that the oldest son was born in 1894, the applicant (the fourth son) April 1, 1898, and the daughter December 9, 1901, the sixth boy and the girl being born the same year; that all of his children were married, except the daughter, and had from one to three children; that his older brother's name was Nge Wing, who was his only brother; that the brother also married in China, had three sons, but that he could not give the names of the sons, or of the brother's wife, or the names of the wife's parents; that he did not know whether any of his brother's children had even come to this country; that in 1901 he and his older brother returned to the United States, arriving at Vancouver in March–April, 1901; that they went from there to Montreal and thence to Port Henry, N. Y., where they were arrested on the charge of being unlawfully in this country; that on December 31, 1901, they were both discharged; that his maternal uncle, Jew Set, was their only witness; that they were given hearings at six different times at Port Henry; that he was present at all the hearings, none of which were held at Plattsburg, N. Y.; that he never was in Plattsburg; that he and his brother were each given certificates of discharge, bearing their pictures, which were taken in Hong Kong; that he had lost the picture off his certificate; that he had never returned to China since coming here in 1901; and that he did not know where his brother was, and had not heard from him for 18 or 20 years.

It also appeared that the two Chinese persons arrested at Port Henry in 1901 were proceeded against under the names of Nge Jung, alias Yee Jung, and Yee Yuen, alias Yu Wen; that they were brothers, the older being Yee Yuen, and were discharged on the ground that they were born in this country; that at the time of their arrest and trial in 1901 their maternal uncle testified that their names were Yee Jung and Yu Wen; that they belonged to the Yee family, Yee being their surname; that Yee Yuen, alias Yu Wen, on returning from a trip to China and applying for admission to the country, at Malone, N. Y., May 9, 1909, testified that his surname was Yee and that his brother's name was Yee Jung; that his brother Yee Jung died in New York about three years before; and

that at Sacramento, Cal., in 1915, he testified that his brother Yee Jung died in New York in 1903 or 1904 and was not married; that the pictures attached to their 1901 certificates were taken at Plattsburg; and two sons of Yee Yuen, who were admitted at San Francisco in 1915, in their examination referred to their father's brother as dead. Their father had but one brother. The court record of the 1901 case shows that the two persons arrested at that time were confined for several months in jail at Plattsburg; that they were arraigned in that town; that the first hearing was had there some six weeks later, and the last two at the commissioner's office in Port Henry, in the absence of the respondents, their presence being waived by agreement of counsel.

In view of what is above set out, it cannot be said that there was no evidence upon which the immigration authorities based their decision. The court below did not err in making the order that it did. It was without jurisdiction to pass upon the merits.

The order of the District Court is affirmed.